IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | : | Case No.  3:09CR444 |
| | : | |
| Plaintiff, | : | Judge Jack Zouhary |
| | : | |
| v. | : | **GOVERNMENT'S RESPONSE IN** |
| | : | **OPPOSITION TO MOTION TO** |
| Shawn M. Lennard, | : | **SUPPRESS EVIDENCE SEIZED** |
| | : | **THROUGH SEARCH WARRANTS** |
| Defendant. | : | |

Defendant Shawn M. Lennard [hereinafter "Lennard" or "Defendant"] has filed a motion to suppress the evidence obtained as a result of search warrants executed by the Federal Bureau of Investigation ["FBI"] on or about September 17, 2009 and September 30, 2009.  (See R.20 Motion to Suppress).  Defendant claims the evidence was illegally seized and is the fruit of an unconstitutional search and seizure in violation of the Fourth and Fifth Amendments to the U.S. Constitution.  Defendant requested an oral hearing.  A superseding indictment was filed on January 6, 2010, charging Lennard with two counts of production of child pornography in violation of 18 U.S.C. § 2251(a); one count of receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2); and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).

Statement of the Facts

On September 17, 2009, FBI Special Agent Steven A. Smith applied for and was issued a

search and seizure warrant for 5555 Flanders Road, Toledo, Ohio, a location believed to conceal

evidence of activities relating to material constituting or containing child pornography, in

violation of 18 U.S.C. § 2252A.  (Case No. 3:09MJ7086).  Agent Smith provided a sworn 15-

page affidavit reciting his law enforcement experience and detailing probable cause in support of

the warrant.  Information was provided by a cooperating witness ["CW"] assisting the Honolulu

division of the FBI, and who has provided reliable information in the past.  The CW reported

information regarding an individual using the Internet alias "boysdaddy" and ""boysdaddy1,"

later self-identified as Shawn ,with whom he was in contact on an Internet website that is

frequented by "boy lovers" (pedophiles interested in young males).  The website allows

individuals to post messages for others to read, and individuals can also initiate real-time online

chats using MSN Messenger.  The CW reported that Shawn joined the website on August 20,

2009, and provided a statement regarding his interest in boys, and claiming to have a 7-year-old

son and a 14-year-old son.  He stated that he still plays with the little one on a regular basis.

Between September 2 and September 6, 2009, Shawn posted statements that he had shot

some videos for his private stash, and that he could share them or trade with the CW as long as

no one else got them, and asking if the person he was corresponding with [the CW] could take

naked pictures or videos for him, and Shawn would share all of his with [the CW].  On

September 4, 2009, Shawn posted the email address "boysdaddy1@gmail.com," said he also uses

that email address for MSN Messenger, and encouraged the CW to get on MSN because he

(Shawn) got the webcam going and wanted to share with him.

On or about September 4, Shawn chatted with another individual collaborating with the

CW, during which he repeatedly attempted to transmit video via a Logitech webcam but

experienced technical difficulty.  Shawn indicated the video showed him and his stepson engaging in sexual activity.  On September 14, 2009, the CW and Shawn engaged in an online chat session during which Shawn wrote that he was getting married in 2 months but his interests lay more in her son than her, and that he had played with the son earlier that evening.  Shawn further detailed his previous and ongoing abuse of the child.  He also stated that he sexually abused his 14-year-old son, and had discussed providing his children to others for financial compensation.  During that chat session, Shawn attempted to send a file to the CW with the name "toddler girl - REAL Dad finding 2yr olds clitter with sound (Pthc,Pedo,Child Baby Fuck).avi." The records from the website indicate posts made by Shawn between August 22, 2009 and September 13, 2009 originated from the IP address 72.241.164.132.

On September 16, 2009, an administrative subpoena was served on Buckeye CableSystem, requesting subscriber information and IP connection data for the account utilizing the IP address 72.241.164.132 between August 22 and September 5, 2009.  Buckeye  CableSystem responded that this IP was assigned to an account with service at 5555 Flanders Road, Toledo, Ohio.  Surveillance was conducted in the vicinity of 5555 Flanders Road.  It revealed that a vehicle parked in the driveway was registered to Shawn Michael Lennard.

Based upon Agent Smith's sworn affidavit attesting to the above facts, Magistrate Judge Vernelis K. Armstrong found probable cause existed and issued the search and seizure warrant for 5555 Flanders Road, Toledo, Ohio on September 17, 2009.

<u>Discussion</u>

When examining an affidavit to determine whether probable cause exists to issue a search warrant, the issuing Magistrate should ascertain whether "... there is a fair probability that contra-

3

band or evidence of a crime will be found in a particular place."  Illinois v. Gates, 462 U.S. 238, 103 S. Ct. 2332 (1983).  This examination, commonly known as the "totality of the circum- stances test," requires the court to examine the facts set forth in the affidavit in a common sense, non-technical fashion.  United States v. Frazier, 423 F.3d 526, 531 (6th Cir. 2005) (quoting Gates, 462 U.S. at 231).  Lennard challenges the adequacy of the warrant issued to search his residence, calling it deficient so as to entitle him to suppression of the evidence the search produced.

In his motion to suppress evidence, Defendant Lennard argues that the affidavit is insufficient for four reasons:  (1) the CW's reliability and honesty; (2) the affidavit did not provide the judge with a substantial basis for an independent determination that probable cause existed because it contained only conclusory hearsay from an unnamed source; (3) there was no reported effort by law enforcement to independently corroborate the CW's information; and (4) the search warrant contained false statements, made intentionally or with reckless disregard for the truth, and also omitted relevant material statements, which omissions were designed to mislead the magistrate.

**1.  The CW's Reliability and Honesty**

In this case, the Cooperating Witness who provided information on the individual identifying himself as Shawn on the internet, gave this information to the Honolulu division of the FBI.  The Honolulu FBI informed the Toledo FBI that this CW had provided reliable information in the past.  (Search Warrant for 5555 Flanders Road, Affidavit in Support at ¶ 18.)

**2.  Magistrate had Substantial Basis to Determine Probable Cause Existed**

"Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion, and is said to exist when there is a fair probability,

given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." United States v. Lattner, 385 F.3d 947, 951-52 (6th Cir. 2004) (internal citations and quotations omitted). The test for probable cause is simply whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332 (1983); United States v. Murphy, 241 F.3d 447, 457 (6th Cir. 2001). Determinations of probable cause are based on a review of the "totality-of-the-circumstances," and involve a practical, common sense review of the facts available to the officer at the time of the search. Illinois v. Gates, 462 U.S. at 230, 103 S.Ct. at 2328; United States v. Sims, 975 F.2d 1225, 1238 (6th Cir. 1992), cert. denied, 507 U.S. 932 (1993). "An issuing judge's findings of probable cause should be given great deference by the reviewing court and should not be reversed unless arbitrarily exercised." United States v. Miller, 314 F.3d 265, 268 (6th Cir.2002), cert. denied, 539 U.S. 908 (2003) (citations omitted). As long as the issuing judge had a "substantial basis" for determining that a search would uncover evidence of wrongdoing, the warrant must be upheld. Id. Accordingly, the issue here is whether the "totality of the circumstances" supported Magistrate Judge Armstrong's determination that there was a substantial basis to find probable cause that a search of 5555 Flanders Road would uncover evidence of wrongdoing.

Defendant contends there was no substantial basis to determine probable cause to search his premises because the affidavit contained only conclusory, hearsay information from an unnamed source. However, it is well established that a magistrate may rely on hearsay contained in the affidavit when determining whether to issue a search warrant. United States v. Dyer, 580 F.3d 386, 390 (6th Cir. 2009), citing United States v. Gunter, 551 F.3d 472, 479 (6th Cir. 2009).

However, when the majority of the information in the affidavit comes from confidential sources, courts "must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of circumstances." Dyer, id., citing United States v. Helton, 314 F.3d 812, 819 (6th Cir. 2003). The Sixth Circuit stated in United States v. Frazier, 423 F.3d 526 (6th Cir. 2005), "[w]hile independent corroboration of a confidential informant's story is not a *sine qua non* to a finding of probable cause, in the absence of any indicia of the informants' reliability, courts insist that the affidavit contain substantial independent police corroboration." Id. at 532, citing United States v. Woosley, 361 F.3d 924, 927 (6th Cir. 2004). However, the court also noted, "[i]f the prior track record of an informant adequately substantiates his credibility, other indicia of reliability are not necessarily required." United States v. Smith, 182 F.3d 473, 483 (6th Cir. 1999). This case falls between the two.

According to the Honolulu office of the FBI, the CW has provided reliable information to their office in the past, and continues to provide information on an ongoing basis. However Agent Smith's affidavit contained no information about the CW's previous tips, the length or nature of the relationship between the CW and the Honolulu FBI, and any indication that the magistrate judge learned of the CW's identity. Therefore the Court looks to other indicia of reliability, for example, if the magistrate's finding of probable cause was also based on the affiant's personal knowledge and observations, rather than hearsay of the informant. See United States v. Jackson, 470 F.3d 299, 308 (6th Cir. 2006).

In United States v. Frechette, 583 F.3d 374 (6th Cir. 2009), the warrant was valid because the affidavit provided the magistrate judge with a substantial basis for finding probable cause when: (1) the defendant paid $79.95 to access a commercial child pornography site using an

email address; (2) the agent determined that Comcast owned the IP address used to access the web site, and that the person who used that IP address had an email address and a PayPal account connected to the defendant's residence; (3) the defendant had a previous criminal history and was listed in the Michigan State Sex Offender Registry at the same address; (4) at the time of the affidavit, the probation office, the postal service, and the department of motor vehicles listed the defendant at that address as well; and (5) based on his four years of experience handling child pornography cases, the agent stated in his affidavit that consumers of child pornography usually maintain illegal images using their computers, and evidence can remain on the computers even after the viewer deletes the images.  Id. at 377, 379-80.  Considering all these facts, the Sixth Circuit held, "there clearly was a 'substantial basis' for the magistrate judge to conclude that there was a fair probability that evidence regarding illegal images of child pornography could be found on a computer located at [defendant's residence]."  Id. at 380.

Like Frechette, Lennard had an email address and IP address connected to 5555 Flanders Road.  At the time of the affidavit, surveillance of that location revealed a vehicle registered to Lennard.   Agent Smith stated in his affidavit that based upon his knowledge, training and also the experience of other law enforcement personnel, he knew that collectors of child pornography tend to retain their personal files and data for extending periods of time, and to routinely transfer most of their data onto new computers when making upgrades.  (Search Warrant for 5555 Flanders Road, Affidavit in Support at ¶¶ 10-14.)

Similarly, in United States v. Perez, 484 F.3d 735 (5th Cir. 2007), the appellate court held that there was a substantial basis to conclude that evidence of criminal activity would be found at 7608 Scenic Brook Drive, Austin, Texas.  The affidavit presented to the magistrate included the

7

information that the child pornography viewed by the complainant/witness in New York had been transmitted over the IP address 24.27.21.6, and that this IP address was assigned to Javier Perez, residing at 7608 Scenic Brook Drive, Austin, Texas.  Perez argued that the association of an IP address with a physical address does not give rise to probable cause to search that address. The court held, "though it was possible that the transmissions originated outside of the residence to which the IP address was assigned, it remained likely that the source of the transmissions was *inside* that residence."  Id. at 740 (emphasis added).  This "fair probability" was bolstered by the New York witness's statement that the internet images she observed appeared to be videos played on a television screen, transmitted via a webcam.  There was therefore a basis to believe that the suspect would have such videos in his residence.  Id. at 741.  The investigating agent stated in his affidavit that, in his experience, persons interested in child pornography typically retain numerous images of child pornography as well as "material documenting the arrangements, the introduction, and tasks to consummate the acquisition of child pornography." The court ruled, "Based on this information, there was probable cause to believe that physical evidence of violations of the child pornography laws would be located at 7608 Scenic Brook Drive."  Id.  Although the analysis was complicated by the fact that 7608 Scenic Brook Drive had more than one occupancy unit, the court held:

> Because the IP address in question was registered in Perez's name, and because the two other individuals living in Perez's house maintained separate residences, there was still a fair probability that Perez was the party responsible for the illegal transmissions. This court has held that the requisite "fair probability" is something more than a bare suspicion, but need not reach the fifty percent mark.

Perez, 484 F.3d at 744 (internal citation omitted).

Applying Perez to the instant case, the witness complaining of child pornography

supplied an internet moniker which lead to a specific IP address, which in turn was associated to a physical address, as is the case with Lennard.  The <u>Perez</u> witness stated she observed videos which appeared to play on a television, which was broadcast via a web camera.  In Lennard's case, there was no witness complaint that Shawn had posted actual child pornographic images on the internet. However, when communicating with the CW, Shawn alluded to shooting videos for his private stash, masturbating to videos, offering to share all of his naked pictures and videos, that he just got the webcam going and wanted to share.  When internet chatting with another individual collaborating with the CW, Shawn repeatedly tried to transmit video via a Logitech webcam but experienced technical difficulty, and wrote that he was watching the video "right now" during the chat session.  (Search Warrant for 5555 Flanders Road, Affidavit in Support at ¶¶ 20-22.)  And as stated above, Agent Smith noted in his affidavit that persons who have a proclivity for sexual activity involving children obtain and retain magazines, film, videos, pictures, and other items of child pornography for long periods of time.  (<u>Id.</u> at ¶ 10).

Following the holdings in <u>Frechette</u>, <u>Perez</u>, and <u>Gates</u>, and based on Agent Smith's affidavit swearing to similar information, as well as the CW's information, there was probable cause for Magistrate Judge Armstrong to believe when considering the totality of the circumstances that physical evidence of violations of the child pornography laws would be located at 5555 Flanders Road, Toledo.

**3.  Law Enforcement Efforts to Corroborate CW's Information**

The CW reported information regarding an individual using the Internet alias "boysdaddy" and "boysdaddy1," who later identified himself as Shawn.  Records from the website indicate that posts made by this Shawn originated from the IP address 72.241.164.132.

In response to an administrative subpoena, Buckeye CableSystem provided subscriber information and IP connection data for the account using IP 72.241.164.132, indicating that this IP was assigned to an account with service at 5555 Flanders Road, Toledo, Ohio.  Law enforcement conducted surveillance in the vicinity of 5555 Flanders Road, Toledo, Ohio.  The surveillance revealed a vehicle parked in the driveway.  Further investigation revealed that the vehicle was registered to Shawn Michael Lennard.  (Search Warrant for 5555 Flanders Road, Affidavit in Support at ¶ ¶ 18, 26-28.)  Thus there was independent law enforcement corroboration of the CW's information regarding an individual named Shawn, traced by Shawn's IP address to a physical location at 5555 Flanders Road, where surveillance showed a vehicle parked in the driveway registered to a person by the name of Shawn.

### 4.  The Search Warrant Affidavit Did Not Contain False Statements, Made Intentionally or with Reckless Disregard for the Truth

Lennard states in his motion to suppress that the search warrant sets forth statements which are false and were made by Agent Smith intentionally, or with reckless disregard for the truth.  He also argues the search warrant affidavit omits relevant, material statements, and the omissions were designed to mislead the magistrate issuing the warrant, or made in reckless disregard of whether they would mislead the magistrate.  (R.20 Motion to Suppress at 5).  Lennard does not specify *which* statements were false; only that, in referring to paragraphs 19 through 25 of Agent Smith's affidavit, "certain of the statements or internet postings quoted therein are falsely attributed to me."  (R.20 Motion, Attach. #1, Lennard's Affidavit, ¶ 3.)  Regarding the alleged omission, Lennard states, "The affiant and/or the 'cooperating witness' ... failed to advise the Magistrate Judge who issued the warrant that many or most of the postings I made to the subject website contained a disclaimer to the effect that the postings were fictitious

and for fantasy purposes only." (Id., Lennard's Affidavit, ¶ 4.)

The defense alleges that the search warrant was obtained in bad faith and requests an oral

hearing, invoking Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674 (1978).  Franks held that in

order to challenge a facially valid affidavit,

> the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.  There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.  They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.  Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.  The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.  Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

Id. at 171, 172, 98 S.Ct. at 2684 (footnote omitted).

The Sixth Circuit has expressed the analytical methodology for a  Franks review in

United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990)(citations omitted):

> A defendant who challenges the veracity of statements made in an affidavit that formed the basis for a warrant has a heavy burden.  His allegations must be more than conclusory.  He must point to specific false statements that he claims were made intentionally or with reckless disregard for the truth.  He must accompany his allegations with an offer of proof.  Moreover, he also should provide supporting affidavits or explain their absence.  If he meets these requirements, then the question becomes whether, absent the challenged statements, there remains sufficient content in the affidavit to support a finding of probable cause.
>
> If probable cause exists absent the challenged statements, a defendant is entitled to no more;  however, if such cause does not exist absent the challenged statements, he is entitled to a hearing if he requests one.  He must show at the hearing, by a preponderance of the evidence, that false statements were made either intentionally or with reckless disregard for the truth and that

without these statements there is insufficient content in the affidavit to support a finding of probable cause.  If he makes this showing, the evidence should be suppressed.

A defendant cannot prevail on a <u>Franks</u> challenge by showing non-material negligence, carelessness, and innocent mistakes.  <u>United States v. Cummins</u>, 912 F.2d 98, 102-03 (6th Cir. 1990).

Defendants bear the burden of proving intentional or reckless false statements in a warrant affidavit.  <u>United States v. Ozar</u>, 50 F.3d 1440, 1443 (8th Cir. 1994), <u>citing</u> <u>United States v. Garcia</u>, 785 F.2d 214, 222, <u>cert. denied</u>, 475 U.S. 1143 (1986).  In <u>Ozar</u>, the court further discussed the circumstances in which a hearing on the merits of a <u>Franks</u> claim is warranted:

> Although this ends the <u>Franks v. Delaware</u> inquiry, we add the following observations concerning the district court's approach to this issue. First, the Supreme Court in <u>Franks v. Delaware</u> cautioned that an evidentiary hearing is not warranted unless defendant makes a *strong initial showing* "of deliberate falsehood or of reckless disregard for the truth."  438 U.S. at 171, 98 S.Ct. at 2684.  A suppression hearing is often warranted in wiretap cases to address statutory issues not present in conventional search warrant cases, such as whether electronic surveillance was necessary and whether it was properly minimized.  But the need for a hearing on those statutory issues is an improper basis for expanding the very limited circumstances in which a <u>Franks v. Delaware</u> hearing is appropriate.  <u>See</u> <u>United States v. Shields</u>, 783 F.Supp. 1058, 1064-65 (N.D.Ill.1991).

Courts have also drawn distinctions between falsehoods and omissions:

> Second, the magistrate judge broadly read our prior cases as equating material falsehoods and material omissions for purposes of establishing a <u>Franks v. Delaware</u> violation.  We disagree.  In a warrant affidavit, the government "need only show facts sufficient to support a finding of probable cause."  <u>United States v. Dennis</u>, 625 F.2d 782, 791 (8th Cir. 1980).  Therefore, "recklessness may be inferred from the fact of omission of information from an affidavit ... *only when the material omitted would have been 'clearly critical' to the finding of probable cause*."  <u>United States v. Reivich</u>, 793 F.2d 957, 961 (8th Cir. 1986) (citation omitted).  <u>See</u> <u>United States v. Anderson</u>, 933 F.2d 612, 615 (8th Cir. 1991).  Rarely will an unintentional omission be grounds for <u>Franks v. Delaware</u> relief when complex economic

12

> crimes are the subject of the investigation.  In such cases, unless the government has lied to the issuing judge, the suppression issue should turn on *what was in the government's affidavits*, not on what defendants assert with the benefit of hindsight the government should have known.

Ozar, supra, 50 F.3d at 1445, 1446 (emphasis added).

In the case of Mays v. City of Dayton, 134 F.3d 809, 815 (6th Cir. 1998), cert. denied, 824

U.S. 942, 118 S.Ct. 2352 (1998), the Sixth Circuit observed:

> A Franks hearing may be merited when facts have been omitted in a warrant application, but only in rare instances.  This Court recently held in U.S. v. Atkins, that affidavits with potentially material omissions, while not immune from Franks inquiry, are much less likely to merit a Franks hearing than are affidavits including allegedly false statements.  U.S. v. Atkins, 107 F.3d 1213, 1217 (6th Cir. 1997).  This court reasoned that allowing omissions to be challenged would create a situation where almost every affidavit of an officer would be questioned.

The court in Mays went on to hold that Brady v. Maryland, 373 U.S. 83 (1963) principles[1]

do not apply to the warrant application process, noting that the affidavit "should not be judged on

formalities, as long as probable cause is evident."  Id.  The Court further explained:

> Whereas the "overriding concern" of Brady is with the "justice of finding guilt" that is appropriate at trial, Agurs, 427 U.S. at 112, Franks recognizes that information an affiant reports may not ultimately be accurate, and is willing to tolerate such a result at that early stage of the process, so long as the affiant believed the accuracy of the statement at the time it was made.  Franks, 438 U.S. at 165.

Mays, 134 F.3d at 816.  The Mays court then strongly cautioned:

> For these reasons, as well as to resolve any confusion resulting from prior opinions, we reiterate that except in the very rare case where the defendant makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is

---

[1] Brady and its progeny established the prosecutor's duty to disclose to the defendant exculpatory evidence, defined as material evidence that would have a bearing upon the guilt or innocence of the defendant.  Brady v. Maryland, 373 U.S. 83,87, 83 S.Ct. 1194, 1196-1197 (1963).

critical to the finding of probable cause, Franks is inapplicable to the omission of disputed facts.

Id.

It is also clear that even a false statement must be material in order to justify relief under

Franks:

> Every other circuit has read Franks to require that a deliberate falsehood be material if the warrant is to be voided because of falsehood.  See United States v. Paradis, 802 F.2d 553, 558 (1st Cir. 1986);  United States v. Ferguson, 758 F.2d 843, 849 (2d Cir.), cert. denied, 474 U.S. 841, 106 S.Ct. 124, 125, 88 L.Ed.2d 102 (1985);  United States v. Calisto, 838 F.2d 711, 714-16 (3rd Cir. 1988);  United States v. Taylor, 857 F.2d 210, 215 (4th Cir. 1988);  United States v. Cuevas-Sanchez, 821 F.2d 248, 252 (5th Cir. 1987); United States v. Malsom, 779 F.2d 1228, 1235 (7th Cir. 1985); United States v. Leisure, 844 F.2d 1347, 1357 (8th Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 324, 102 L.Ed.2d 342 (1988);  United States v. Whitworth, 856 F.2d 1268, 1280-81 (9th Cir. 1988), cert. denied, 489 U.S. 1084, 109 S.Ct. 1541, 103 L.Ed.2d 846 (1989); United States v. Barrera, 843 F.2d 1576, 1580 (10th Cir.), cert. denied, 488 U.S. 859, 109 S.Ct. 153, 102 L.Ed.2d 124 (1988); United States v. Kirk, 781 F.2d 1498, 1505-06 (11th Cir. 1986); United States v. Richardson, 861 F.2d 291, 294 (D.C.Cir. 1988) (per curiam), cert. denied, 489 U.S. 1058, 109 S.Ct. 1325, 103 L.Ed.2d 593 (1989).

United States v. Campbell, 878 170, 172 (6th Cir. 1989).  See, e.g., United States v. Colkey, 899

F.2d 297, 303 (4th Cir. 1990)(Franks violation requires "demonstration of moral culpability" that

can be shown where falsehood is "deliberate" or made with "reckless disregard for the truth").

As the authorities cited above clearly show, Franks is concerned with intentionally or

recklessly made false statements.  Implicit in the Franks inquiry is the need for the defense to

come forward with evidence of falsity.  However, nowhere in the defense motion is there any

proof that any specific piece of information submitted by Agent Smith is actually false.

Furthermore, no evidence of falsity is submitted by way of affidavit, other than Lennard's vague

allegation that "certain" of the statements or internet postings contained in Agent Smith's

14

affidavit were falsely attributed to Lennard.  Under the above principles, the allegations made by the defendant in this case are so deficient under <u>Franks</u> that they fail to justify a hearing.

**5.  The Search Warrant Affidavit Did Not Omit Material Statements**

Next, Lennard argues that the affidavit omitted statements which would have been material to the determination of probable cause, and these omissions were designed to mislead the magistrate or were made in reckless disregard of whether they would mislead the magistrate. In his affidavit, Lennard states, " The affiant and/or the 'cooperating witness' referenced in that subject affidavit failed to advise the Magistrate Judge who issued the warrant that many or most of the postings I made to the subject website contained a disclaimer to the effect that the postings were fictitious and for fantasy purposes only."  (R.20 Motion to Suppress, Attach. #1, Lennard's Affidavit, ¶ 4.)  This argument fails to show either that the probable cause for the search warrant was lacking, or that Agent Smith's affidavit contained material false statements.

The Sixth Circuit in <u>United States v. Atkin</u>, 107 F.3d 1213, 1217 (6th Cir. 1997) addressed the issue of material omissions:

> Although material omissions are not immune from inquiry under <u>Franks</u>, we have recognized that an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information.  <u>United States v. Martin</u>, 920 F.2d 393, 398 (6th Cir. 1990).  This is so because an allegation of omission "potentially opens officers to endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit."  <u>Id.</u> (quoting <u>United States v. Colkley</u>, 899 F.2d 297, 301 (4th Cir. 1990)).  If the defendant does succeed in making a preliminary showing that the government affiant engaged in "deliberate falsehood" or "reckless disregard for the truth" in omitting information from the affidavit, the court must then consider the affidavit including the omitted portions and determine whether probable cause still exists. <u>United States v. Bonds</u>, 12 F.3d 540, 568 n. 23 (6th Cir. 1993).

<u>Atkin</u>, 107 F.3d at 1217.  Moreover, it is unreasonable to expect a police officer to include every

piece of exculpatory information gathered about the case in the affidavit because the standard for obtaining a search warrant is lower than the standard to convict.  Mays, 134 F.3d at 814-816. Mays clearly requires a preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is *critical* to the finding of probable cause.  Atkin held that affidavits with potentially material omissions, while not immune from Franks inquiry, are much less likely to merit a Franks hearing than are affidavits including allegedly false statements.  Atkin, 107 F.3d at 1217.

Lennard alleges that *either* the cooperating witness *or* Agent Smith intentionally or recklessly, for the purpose of misleading the magistrate, omitted that Lennard put a "disclaimer" that many or most of his internet postings were fictitious and for fantasy purposes only. Defendant believes that if this disclaimer had been revealed to the magistrate, she would not have found probable cause to issue the search warrant.  The government asserts that this alleged omission was neither material, nor recklessly or negligently made, and certainly not omitted with the intent to mislead the magistrate.  In addition, the Franks opinion stated, "The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant."  Franks, 438 U.S. at 171, 172.  Accordingly, if the omission of Lennard's alleged "disclaimer" was attributable to the CW, Agent Smith could not have been recklessly negligent in failing to provide that information in his own affidavit.

Mays indicates that in omission cases, Franks is inapplicable unless the plaintiff makes a strong preliminary showing of a defendant's intention to mislead in making the omissions. Mays, 134 F.3d at 816.  While the Sixth Circuit has not described in great detail what types of evidence will satisfy the strong preliminary showing of an intention to mislead in omission cases,

it seems clear that Lennard has not met that burden here.  In <u>Hale v. Kart</u>, 396 F.3d 721, 727  (6th Cir. 2005), the court held:  "The mere existence of omissions alone is ordinarily not enough to make this strong preliminary showing. We do not foreclose the possibility that strongly material omissions could provide evidence of an intention to mislead; however, there is no evidence that the omissions of which plaintiff complains were material to the grant of the search warrant."  The court continued, "In order to determine whether the omissions were critical to the finding of probable cause, this court has indicated that the affidavit should be reevaluated with the omitted portions included to see if those omitted items would change a probable cause determination." <u>Id.</u>, <u>citing</u> <u>United States v. Hill</u>, 142 F.3d 305 (6th Cir.1998).

In this case, even if the magistrate had been informed that many of Lennard's postings included a disclaimer that his statements were fictitious, Agent Smith's affidavit still provided probable cause for a search warrant because the facts and circumstances were such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched.  See <u>Mays v. City of Dayton</u>, 134 F.3d 809, 814 (6th Cir. 1998)(internal citations omitted).  This is true for two reasons.  First, the alleged crime is so serious, involving an innocent victim, the nature of which is generally not publicly visible, that further investigation was warranted.  Simply adding a disclaimer does not relieve the authorities from investigating Lennard's statements, any more than an airline passenger who states he has a bomb in his luggage is relieved from being searched simply because he adds, "It was only a joke."  (Serious crime, potential innocent victims, instrumentality or evidence of crime not publicly visible, but hidden inside luggage.)

Second, and more importantly, Agent Smith's affidavit contained more than the simple posting of statements or stories attributed to Lennard.  Lennard attempted to upload video of

himself molesting his 7-year-old stepson.  Lennard encouraged the CW to get on MSN because Lennard got his webcam going.  Finally, Lennard agreed to share his naked pictures and videos with the CW, after stating earlier that he had shot some "awesome videos" for his "private stash." These three incidents involved more than mere words or fantasy stories; they involved images and videos.  These images and videos, when coupled with the reference to the webcam, would likely be stored at the same location as Lennard's webcam and computer – his residence at 5555 Flanders Road, Toledo.  Although Agent Smith's affidavit omitted Lennard's alleged "disclaimer," it was not a material or critical omission.

Even if the alleged omission were included in the search warrant affidavit, it still would have supported a finding of probable cause.  In determining the existence of probable cause to support a search warrant, a magistrate judge must "make a practical, common-sense decision whether, given all the facts and circumstances set forth in the affidavit before him, including 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Illinois v. Gates, 462 U.S. 213, 238 (1983).  The traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a "substantial basis for ... conclud[ing]" that a search would uncover evidence of wrongdoing, the Fourth Amendment required no more."  Gates, supra, 462 U.S. at 236, 103 S.Ct. at 2331 (quoting Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 736 (1960)).

None of the defendant's efforts has yet to disclose any evidence which even suggests that Smith knowingly presented any false fact to the magistrate in support of the search warrant. None of these efforts have even disclosed negligence on Agent Smith's part.

Franks prohibits a hearing where, as here, the defendant has failed to sustain his burden of

showing that the affiant submitted materially false information to the Court.  Given the conclu-sory allegations advanced by the defense, Franks and its progeny prohibit a hearing in this case.

This Court should not let the talismanic invocation of Franks v. Delaware lead automatically to the granting of a hearing.  Franks clearly places the burden of coming forward with evidence of material falsity upon the defense.  Here, the defendant has clothed a probable cause challenge in Franks parlance to gain pretrial access to the government's agent for purposes of committing him to testimony and obtaining discovery not provided for in Rule 16, Federal Rules of Criminal Procedure.  This Court should not permit such an end-run around the clear holdings of the Supreme Court and the Sixth Circuit.

Accordingly, the defense motion for a Franks hearing must be denied.

## 6.  The Subsequent Search Warrants Were Not Tainted

Lennard further seeks to suppress the evidence seized from subsequent searches of his personal vehicle and his Google, Inc. account.  Defendant makes no specific claims of falsehoods regarding the affidavits in support of these searches.  Instead, he contends any evidence seized should be suppressed on the theory that it is the "fruit of the poisonous tree," because of the allegedly false and misleading representations included in the initial search warrant of Defendant's home.

As discussed above, the initial affidavit in support of the search warrant provided sufficient evidence to support probable cause that evidence of a crime would be found at Defendant's residence.  Because the warrant was supported by probable cause and Defendant has not made the proper showing to warrant a Franks hearing, there would be no need to reach the issue of whether the officers are entitled to the good faith exception of United States v. Leon, 468 U.S. 897 (1984); United States v. Gunter, 551 F.3d 472, 482 (6th Cir. 2009) (citing United States

19

v. Miller, 314 F.3d 265, 271 (6th Cir. 2002) (good faith exception not applicable when court finds warrant was based on probable cause)).  Nevertheless, the government will address the good faith exception.

### 7. The Good Faith Exception

In the alternative to the sufficiency of probable cause to issue the search warrant, courts have universally recognized a good faith exception to the exclusionary rule.  Under that exception, even if a warrant is later found to be defective, if the executing officers relied upon it in good faith, evidence obtained pursuant to the search is still admissible.  United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405 (1984).  In Leon, the Supreme Court held that although the search warrant was invalid, the evidence seized pursuant thereto was nevertheless admissible.  Id. at 905.  The rationale offered by the Court was that "[t]he Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands, and an examination of its origin and purposes makes clear that the use of fruits of a past unlawful search or seizure '[works] no new Fourth Amendment wrong.'"  Id. at 906 (quoting United States v. Calandra, 414 U.S. 338, 354, 94 S.Ct. 613 (1974)).

Therefore, evidence obtained in good faith reliance upon a facially valid search warrant should not be excluded unless such exclusion furthers the purpose of the exclusionary rule, that is, to deter police misconduct.  Id. at 918. However, in the situation where the mistake was made by the issuing magistrate, excluding the evidence obtained by the police does nothing to deter such misconduct.  Id.

In analyzing this issue, it is important to recognize, as did the Supreme Court in Leon, 468 U.S. at 923, 104 S.Ct. at 3421, that the exclusionary sanction is appropriately imposed in a given case as a "judicially created remedy to safeguard Fourth Amendment rights generally

through its deterrent effect...."  Leon, 468 U.S. at 906, quoting Calandra, 414 U.S. at 348.

Indeed, Leon rejected the implication "that the exclusionary rule is a necessary corollary of the

Fourth Amendment."  Leon, 468 U.S. at 905.

Recognizing the "substantial social costs exacted by the exclusionary rule" in interfering

with the judicial system's truth-finding function, "the application of the rule has been restricted

to those areas where its remedial objectives are thought most efficaciously served."  Id. at 908,

quoting Calandra, 414 U.S. at 348.

The Leon court also noted that "it does not follow from the emphasis on the exclusionary

rule's deterrent value that 'anything which deters illegal searches is thereby commanded by the

Fourth Amendment.'"  Id. at 910, quoting Alderman v. United States, 394 U.S. 165, 174 (1969).

The Supreme Court has thus recognized in numerous cases that in deciding whether or not

exclusion is warranted, the Court "attempts to mark the point at which the detrimental effect of

the exclusionary rule no longer justifies its cost."  Id. at 911, quoting Brown v. Illinois, 422 U.S.

590, 609 (1975).

Applying these concepts to search warrants, because of the "strong preference for

warrants," "in a doubtful or marginal case a search under a warrant may be sustainable where

without one it would fail."  Id. at 914, quoting United States v. Ventresca, 380 U.S. 102, 106

(1965).  Thus great, but "not boundless," discretion is accorded to the magistrate's finding of

probable cause.  Id.  Great deference would not preclude inquiry into (1) the "knowing or

reckless falsity of the affidavit," or into (2) whether the magistrate failed to perform his "neutral

and detached" function, or (3) where the affidavit does not provide the magistrate with a

substantial basis for determining probable cause.  Id.

The focus for deterrence purposes, however, is on the police officer and not the judicial

officer, for "the exclusionary sanction is not necessary meaningful to inform judicial officers of their errors . . ." Id. at 917.  Thus,

> If exclusion of evidence obtained pursuant to a subsequently invalidated warrant is to have any deterrent effect, therefore, it must alter the behavior of individual law enforcement officers or the policies of their departments.  One could argue that applying the exclusionary rule in cases where the police failed to demonstrate probable cause in the warrant applications deters future inadequate presentations or "magistrate shopping" and thus promotes the ends of the Fourth Amendment.  Suppressing evidence obtained pursuant to a technically deficient warrant supported by probable cause also might encourage officers to scrutinize more closely the form of the warrant and to point out suspected judicial errors.  We find such arguments speculative and conclude that suppression of evidence pursuant to a warrant *should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule.*

Id. at 918 (emphasis added).

It is the magistrate's responsibility, the Court reasoned, to determine whether the officer's allegations amount to probable cause, not the agent's.  Thus, "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient."  Id. at 921.  Once the warrant issues, there is nothing else the officer can do, and thus, "[p]enalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations."  Id.

Suppression remains an appropriate remedy only in a few narrow circumstances, such as where, as is argued here, an affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  Id. at 923, quoting Brown v. Illinois, 422 U.S. at 610-611.  An affidavit of this nature is typically regarded as a "bare bones" affidavit, or one which contains "wholly conclusory statements, which lack the facts and circumstances from

22

which a magistrate can independently determine facts and circumstances from which a magistrate can independently determine probable cause." <u>United States v. Satterwhite</u>, 980 F.2d 317, 320-21 ((5th Cir. 1992).

The police officer's conduct must, of course, be objectively reasonable.  Moreover, this objective standard requires officers to have a "reasonable knowledge of what the law prohibits." <u>Id.</u> at 922, n.22.

Phrased in objective terms, then, the issue is "[w]hether a reasonably well-trained officer could believe that this affidavit stated probable cause for the search..."  <u>United States v. Savoca</u>, 761 F.2d 292, 297 (6th Cir. 1985).  Or, more specifically, whether a reasonably-trained police officer would know that an affidavit which states that a qualified informant had "just" made pertinent observations, without specifically supplying the date and time of those observations, is fatally defective, i.e., is a "bare bones" affidavit.

Accordingly, Agent Smith's affidavit sufficiently established probable cause to search 5555 Flanders Road, Toledo, Ohio, and the warrant was valid.  Great deference should be given to the issuing judge's findings of probable cause.  Even if Lennard could demonstrate that the affidavit lacked probable cause, the good-faith exception of <u>United States v. Leon</u>, 468 U.S. 897, 104 S.Ct. 3405 (1984), would apply, because this affidavit is not "so lacking in indicia of probable cause as to render official belief in it as entirely unreasonable."  <u>Id.</u> at 923, 104 S.Ct. 3405 (internal quotation marks and citation omitted).

Conclusion

For the foregoing reasons, this Court should deny Defendant Shawn M. Lennard's Motion

to Suppress Evidence Seized Through Search Warrants.

Respectfully submitted,

STEVEN M. DETTELBACH
UNITED STATES ATTORNEY


 /s/ Thomas O. Secor
Thomas O. Secor
Assistant United States Attorney
Reg. No. 0019852
Four Seagate, Suite 308
Toledo, Ohio 43604
(419) 259-6376
Fax: (419) 259-6360
E-mail: Thomas.Secor@usdoj.gov



CERTIFICATE OF SERVICE

I hereby certify that on February   9  , 2010, a copy of the foregoing Response In

Opposition to Motion to Suppress Evidence Seized Through Search Warrants was filed

electronically.  Notice of this filing will be sent to all parties by operation of the Court's

electronic filing system.  Parties may access this filing through the Court's system.

Mark C. Geudtner, Esq.
601 Adams St. - 2nd Floor
Toledo, OH 43604
    Attorney for Defendant Shawn M. Lennard

 /s/ Thomas O. Secor
Thomas O. Secor
Assistant United States Attorney

24